UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK, )
a national banking association, )
                              )
        Plaintiff,            )     Case No.
                              )
v.                            )     Judge
                              )     Magistrate Judge
JV SBAM SA LLC, a Michigan Limited )
liability company, JOHN R. GIBBS, an )
individual, DIEGO REYES, an individual, )
GABRIEL P. WEINERT, an individual, )
MICHAEL OUAKNINE, an individual, and )
the MICHAEL OUAKNINE LIVING )
TRUST DATED AUGUST 27, 2019, )
                              )
        Defendants.           )

_____

ALOIA LAW
By:  Joseph N. Ejbeh (P48961)
     Ralph Colasuonno (P55019)
Attys for Plaintiff
48 South Main Street, Suite 3
Mt. Clemens, MI  48043
586.783.3300
ejbeh@aloia.law
colasuonno@aloia.law

_____

## VERFIED COMPLAINT FOR FORECLOSURE, APPOINTMENT OF RECEIVER, AND OTHER RELIEF

Plaintiff, The Huntington National Bank ("Plaintiff") states as follows:

**NATURE OF THE CASE**

1.     This action involves the default of Defendant JV SBAM SA, LLC, the ("Borrower"), under the terms of a commercial loan in the original principal amount of $3,960,000.00 (the "Loan") from the Plaintiff ("Lender"), guaranteed by the other remaining named Defendants.

2.     This action is instituted to recover the amounts due and owing under the Loan, for recovery of amounts due under the guaranties at issue, for foreclosure of the real property given to secure the indebtedness under the Loan, and for the appointment of a receiver to prevent waste, prevent damage or destruction of the property, to operate and manage the property, collect rents and proceeds, and/or to sell the property at issue.

**PARTIES, JURISDICTION AND VENUE**

3.     Plaintiff incorporates by reference each of the foregoing allegations contained in this Complaint.

4.     Plaintiff is the successor by merger to TCF National Bank and is a national banking association with its main office as set forth in its articles of association in Columbus, Ohio. Thus, Plaintiff is a citizen of Ohio for purposes of diversity jurisdiction under 28 U.S.C. §1332.

5.     Upon information and belief, Defendant John R. Gibbs is an individual who resides in and maintains a Michigan address, and who operates a business in

2

Michigan and is therefore domiciled in Michigan and is considered a citizen of Michigan for purposes of diversity jurisdiction under 28 U.S.C. §1332.

6. Upon information and belief, Defendant Michael Ouaknine is an individual who resides in and maintains a Michigan address, and who operates a business in Michigan and is therefore domiciled in Michigan and is considered a citizen of Michigan for purposes of diversity jurisdiction under 28 U.S.C. §1332.

7. Upon information and belief, Defendant The Michael Ouaknine Living Trust Dated August 27, 2019 is a trust formed and existing under the laws of the state of Michigan. The situs of said Trust is in Michigan and its trustees both reside in and conduct business in Michigan, and therefore the Trust is domiciled in Michigan and is therefore considered a citizen of Michigan for purposes of diversity jurisdiction under 28 U.S.C. §1332.

8. Upon information and belief, Defendant Diego Reyes is an individual who resides in and maintains a Greenwich, Connecticut address and is therefore domiciled in Connecticut and is considered a citizen of Connecticut for purposes of diversity jurisdiction under 28 U.S.C. §1332.

9. Upon information and belief, Defendant Gabriel P. Weinert is an individual who resides in and maintains a Los Angeles, California address and is therefore domiciled in California and is considered a citizen of California for purposes of diversity jurisdiction under 28 U.S.C. §1332.

3

10.     Defendant JV SBAM SA, LLC is a Michigan limited liability company with its principal place of business in Michigan, and its citizenship for purposes of diversity jurisdiction is based on the citizenship of its members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

11.     The members of JV SBAM SA, LLC consist of two limited liability companies: (i) SBAM Wealthy Street QOF, LLC, a Michigan limited liability company, holding a 24.12% membership interest, and (ii) Golden Glades Grand Rapids Opportunity Fund, LLC, a Delaware limited liability company, holding a 75.88% membership interest.

12.     The members of SBAM Wealthy Street QOF, LLC are each of the individual defendants listed above: (a) John R. Gibbs; (b) Michael Ouaknine; (c) The Michael Ouaknine Living Trust Dated August 27, 2019; (d) Diego Reyes; and (e) Gabriel P. Weinert. The citizenship of each of these individuals is as set forth in paragraphs 5-9 above. Each of their respective citizenships are diverse to Plaintiff's Ohio citizenship and therefore, there exists diversity for purposes of 28 U.S.C. §1332.

13.     The four individual members of Golden Glades Grand Rapids Opportunity Fund, LLC, are:

(i)     Alex Durand individually and the Alex Durand Family Trust;
(ii)    Sam Shefrin;
(iii)   The Scott Hendrickson Family Trust; and
(iv)    Taylor Beaupain.

14. Upon information and belief, Alex Durand and The Alex Durand Family Trust is an individual and Trust that resides in and maintains a Dallas, Texas address and is therefore domiciled in the state of Texas and is considered a citizen of the state of Texas for purposes of diversity jurisdiction under 28 U.S.C. §1332.

15. Upon information and belief, Scott Hendrickson and The Scott Hendrickson Family Trust is an individual and Trust that resides in and maintains a Park City, Utah address and is therefore domiciled in the state of Utah and is considered a citizen of the state of Utah for purposes of diversity jurisdiction under 28 U.S.C. §1332.

16. Upon information and belief, Sam Shefrin is an individual who resides in and maintains a Castle Rock, Colorado address and is therefore domiciled in the state of Colorado and is considered a citizen of Colorado for purposes of diversity jurisdiction under 28 U.S.C. §1332.

17. Upon information and belief, Taylor Beaupin is an individual that resides in and maintains a Manhattan Beach, California address and is therefore domiciled in the state of California and is considered a citizen of California for purposes of diversity jurisdiction under 28 U.S.C. §1332.

18. Complete diversity of citizenship exists as to all named Defendants and Plaintiff-Lender for purposes of establishing diversity jurisdiction under 28 U.S.C. §1332.

19.     Jurisdiction is also proper under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.00 and Plaintiff otherwise seeks equitable relief including, without limitation, appointment of a receiver under Fed. R. Civ. P. 66 and federal law.

## GENERAL ALLEGATIONS

20.     Plaintiff incorporates by reference each of the foregoing allegations contained in this Complaint.

### A.     Loan Documents and Secured Indebtedness.

21.     On May 14, 2021, JV SBAM SA, LLC, as borrower (hereinafter referred to as "Borrower"), executed a Term Loan Promissory Note with the Plaintiff in the original amount of $3,960,000.00 (the "Term Note") (**Exhibit A**) along with a Term Loan Agreement (the "Term Loan Agreement") (**Exhibit B**), designated as Loan No. xxxxxx2810, to secure partial funding of Borrower's purchase of the real properties known as: (a) 440 Grandville Ave, Grand Rapids, Michigan 49503 (the "Grandville Property"); and (b) 188-190 Wealthy Street, SW, Grand Rapids, Michigan 49503 (the "Wealthy Property") (collectively both properties shall be referred to as the "Property").

22.     The Loan is secured by a mortgage granted by Borrower to Plaintiff dated May 14, 2021, in which Plaintiff was granted a first secured interest in the

6

Property, as recorded on May 20, 2021, as Document No. 202105200059873, Kent County Records (the "Mortgage") (**Exhibit C**).

23.     The Loan is further secured and evidenced by an Assignment of Leases and Rents granted by Borrower to Plaintiff dated May 14, 2021, in which Plaintiff was granted an assignment of secured interest in the Property, as recorded on May 20, 2021, as Document No. 202105200059274, Kent County Records (the "Assignment of Leases and Rents") (**Exhibit D**).

24.     The Loan is further secured and evidenced by the Bank's perfected filing of a UCC Financing Statement with the Michigan Department of State, recorded on May 14, 2021, as Filing Number 20210514000523-1 (the "UCC Financing Statement") (**Exhibit E**).

25.     The payment of the Loan is guaranteed by the Michael Ouaknine Living Trust Dated August 27, 2019[1] (the "Trust"), John R. Gibbs, individually ("Gibbs"), Michael Ouaknine, individually ("Ouaknine"), Diego Reyes, individually ("Reyes"), and Gabriel P. Weinert, individually ("Weinert") (each a "Guarantor" and collectively, the "Guarantors"), promising the full and prompt repayment of the Term Note according to the expressed terms set forth in the "Guaranty of Payment" dated May 14, 2021 (the "Guaranty of Payment") (**Exhibit F**).

---

[1] The Guaranty was signed on behalf of the Trust by Michael Ouaknine and Julie Diffenbach in their capacities as co-trustees of the Trust.

26.   The Loan is further evidenced by other unnamed loan documents that may exist as contained in the Plaintiff's Loan file (collectively, the "Other Loan Documents").

27.   The Loan originally matured on May 14, 2023.

28.   On June 21, 2023, (but with an effective date of May 14, 2023) Borrower and Guarantors executed a First Amendment to Term Loan Agreement, Term Note and Loan Documents ("First Amendment") which, among other things, extended the maturity date of the Loan to January 3, 2024 (**Exhibit G**).

29.   Together, the Term Note, Term Loan Agreement, the First Amendment, Mortgage, Assignment of Leases and Rents, UCC Financing Statement, Guaranty of Payment and the Other Loan Documents are collectively referred to hereafter as the "Loan Documents", and the amounts due under the Loan Documents shall be referred to herein as the "Indebtedness".

**B.   Events of Default under the Loan Documents.**

30.   Section 1.2 of the First Amendment provided, in part, that if Borrower provided to Plaintiff a term sheet from a new lender evidencing exit financing, as a condition precedent, the Plaintiff would agree to extend the maturity date of the Loan from January 1, 2024, to July 1, 2024 (**Exhibit G, page 3**).

31.   Borrower failed to provide any term sheet to Plaintiff.

32.     Accordingly, the Term Note has matured as of January 3, 2024, and is in Default for the Borrower's failure to pay the entire indebtedness due and owing under the Loan upon Maturity that occurred on January 3, 2024 (the "Maturity Default").

33.     The Loan Documents provide that if the Principal Balance and all accrued interest and charges have not been "repaid on or before the Maturity Date, or if an Event of Default occurs pursuant to the Loan Agreement or any other document or instrument securing the Note then, upon notice…to Borrower, at the option of Lender, interest on the Principal Balance shall accrue at an annual rate equal to five percent (5%) per annum plus the interest rate that otherwise would be in effect under this Note in the absence of any such failure to pay or Event of Default (the "Default Rate"), until all Events of Default have been cured."  (**Exhibit A, ¶ *2.2* (c), page 4**).

34.     The Plaintiff invoked the Default Rate under the Loan Documents as of January 3, 2024, and has applied the Default Rate (fourteen percent (14%) per annum) to the Term Loan and Note.

35.     In addition to the Maturity Default, the Borrower has failed to pay the 2023 Summer real estate taxes for the Property which is also a default under the Loan Documents ("Tax Default") (**Exhibit H**).

36.     Under Michigan law, failure to pay real estate taxes amounts to waste.

9

37.    In addition to the Maturity and Tax Default, there exists other uncured events of default under the Loan Documents as set forth in the Plaintiff's Default Letter dated February 14, 2024 (**Exhibit I**).

38.    On February 14, 2024, Plaintiff sent Defendants a notice of default and demand for payment (**Exhibit I**), that summarizes all Defaults and failure to cure.

39.    Despite the notice of default and demand for payment, and the attempt at an amicable resolution to avoid litigation, the Borrower has failed and refuses to pay the Indebtedness owed under the Loan and to date remains in default.

40.    Pursuant to the First Amendment, Defendants released Plaintiff from any and all claims, damages and obligations and further warranted and represented they had no defense to payment of, nor any right to set off against, any of the obligations to the Plaintiff under the Loan Documents. (**Exhibit G, section 2.5, pages 5-6**).

41.    Defendants currently owe Plaintiff the following outstanding balance under the Loan, inclusive of interest and late fees through March 22, 2024, plus all accruing but unpaid interest, late fees, other disbursements, penalties, protective advances, and other lawful charges under the Loan Documents after said date and through the date of judgment, exclusive of all attorney fees and costs (referred to and defined hereafter as the ("Loan Balance"):

| | |
|---|---|
| Principal: | $3,861,903.54 |
| Interest: | $129,881.82 |

| Late Charges: | $7,551.21 |
| Other fees | $90.00 |
| **Loan Balance:** | **$3,999,426.57** |

42.     Borrower and Guarantors are also contractually liable for payment of Plaintiff's attorney fees and costs incurred by Plaintiff by virtue of default and acceleration of the Indebtedness and for Plaintiff's enforcement of the Loan Documents.

### C.     Contractual Right to Appointment of Receiver.

43.     Pursuant to the Loan Documents including, without limitation, at section 10.0(e) of the Loan Agreement (**Exhibit B**) and at section 20 of the Mortgage (**Exhibit C**), the Borrower explicitly agreed and consented to the appointment of a receiver over the Property upon the occurrence and during the continuance of a default under the Loan Documents.

44.     The appointment of a receiver over the Property in this case is necessary to prevent waste, loss, transfer, dissipation, or impairment as the Borrower remains in default under the Loan Documents.

45.     In addition, and a result of the Defendant Borrower's conduct, the collateral held by the Mortgage may not be sufficient to satisfy the secured obligation due.

46.     This Court should appoint a receiver pursuant to Fed. R. Civ. P. 66 and applicable law to allow Plaintiff to realize upon its commercial collateral and be made whole.

## COUNT I - BREACH OF COMMERCIAL NOTE

47.     Plaintiff incorporates by reference each of the foregoing allegations contained in this Complaint.

48.     By executing and delivering the Term Note to Plaintiff in exchange for the loan proceeds, the Borrower entered into a valid and binding contract, thereby obligating itself to honor the terms of the Loan Documents (**Exhibit A**).

49.     The Term Note, at section 5, states that the occurrence of any "Event of Default" under the Term Loan Agreement, would also constitute an event of default under the Term Note.

50.     Borrower is in default of the Term Note because it has matured, and Borrower has failed to pay the Indebtedness due upon maturity.

51.     In addition, Borrower is also in default for failure to fund the Interest Reserve Account, failure to pay real estate taxes when due and failure to make loan payments when due.

52.     Despite notice and opportunity to cure, the Borrower has neglected and/or refused to pay the Indebtedness due under the Loan Document to Plaintiff.

53.   As a result of the Borrower's failure to comply with its obligations under the Loan Documents, Plaintiff has suffered and will continue to suffer damages due to the Borrower's defaults.

54.   Should this Court appoint a receiver over the Property, and to the extent any receivership sale does not generate proceeds sufficient to pay off the entire Indebtedness due under the Loan Documents, Plaintiff will continue to suffer damages.

55.   Under the terms of the Loan Documents, Plaintiff is entitled to a judgment against the Borrowers for any deficiency amount remaining, including all attorney fees and costs, following any disposition of the Property by any receiver appointed by this Court.

THEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against the Borrower for any and all damages in the amount of the Loan Balance of **$3,999,426.57,** inclusive of interest and late fees through March 22, 2024, plus any and all accruing but unpaid interest, late fees, other disbursements, penalties, protective advances, and any other lawful charges under the Loan Documents after said date and through the date of judgment, together with attorney fees and costs. Plaintiff further requests all other relief in its favor as is deemed just and equitable under the circumstances.

13

## COUNT II – BREACH OF GUARANTY

56.     Plaintiff incorporates by reference each of the foregoing allegations contained in this Complaint.

57.     The Guaranty of Payment executed by the Michael Ouaknine Living Trust Dated August 27, 2019, John R. Gibbs, individually, Michael Ouaknine, individually, Diego Reyes, individually, and Gabriel P. Weinert, individually, is a valid and enforceable contract (**Exhibit F).**

58.     Under the Guaranty of Payment, each of the Guarantors unconditionally and irrevocably promised to pay the Indebtedness due by the Borrower under the Term Note in the event of a default thereunder.

59.     After notice was provided to the Borrower of its default and demand for payment by Plaintiff, the Guarantors neglected and/or refused to pay the Indebtedness due.

60.     Guarantors' failure to pay constitutes a breach of the Guaranty of Payment.

61.     Plaintiff has suffered damages because of the Guarantors' failure to honor the terms of the Guaranty of Payment.

THEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against the Borrower for any and all damages in the amount of the Loan Balance of **$3,999,426.57,** inclusive of interest and late fees through

March 22, 2024, plus any and all accruing but unpaid interest, late fees, other disbursements, penalties, protective advances, and any other lawful charges under the Loan Documents after said date and through the date of judgment, together with attorney fees and costs. Plaintiff further requests all other relief in its favor as is deemed just and equitable under the circumstances.

## COUNT III – BREACH OF THE ASSIGNMENT OF RENTS

62.     Plaintiff incorporates by reference each of the foregoing allegations contained in this Complaint.

63.     The Assignment of Rents executed by the Borrower is a valid and enforceable contract (**Exhibit D**).

64.     Pursuant to the Assignment of Rents, Plaintiff has an unconditional and absolute right and interest in and to all rents and proceeds from the Property.

65.     Any occurrence of an "Event of Default" by the Borrower under the Term Loan Agreement (**Exhibit B, section 10.1**) constitutes a default under the Assignment of Rents which immediately suspends the Borrowers' right to collect such rents and proceeds (**Exhibit D, section7**).

66.     Upon any default under the Assignment of Rents, the right to collect such rents and proceeds inures to the Plaintiff who, by way of receiver or otherwise, may collect such rents and proceeds as allowed thereunder.

67.     The Borrower remains in default under the Loan Documents and has failed and refused to turn over any such rents and proceeds and/or the ability to generate such rents and profits to the Plaintiff.

68.     Plaintiff has suffered damages as a result of Borrower's breach of the Assignment of Rents.

THEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against the Borrower for any and all damages in the amount of the Loan Balance of **$3,999,426.57,** inclusive of interest and late fees through March 22, 2024, plus any and all accruing but unpaid interest, late fees, other disbursements, penalties, protective advances, and any other lawful charges under the Loan Documents after said date and through the date of judgment, together with attorney fees and costs. Plaintiff further requests all other relief in its favor as is deemed just and equitable under the circumstances.

## **COUNT IV – FORECLOSURE UPON MORTGAGE**

69.     Plaintiff incorporates by reference each of the foregoing allegations contained in this Complaint.

70.     The Borrower is in default under the terms of the Loan Documents.

71.     Plaintiff has provided appropriate notice to Defendants of their defaults.

72.     Despite such notices, Defendants have failed, refused, or neglected to cure such defaults or to make payment as required under the terms of the Loan Documents.

73.     Under the Loan Documents, such defaults entitle Plaintiff to exercise all remedies under the Loan Documents and applicable law. Such remedies include, without limitation, the option to commence proceedings to foreclose the Mortgage.

74.     There are no current proceedings to recover all, or part of the debt secured by the Mortgage, or any part of it, and no part of the debt currently due and owing has been collected or paid.

75.     Based upon a search of title, Plaintiff has joined as Defendants to this suit all those persons and entities whose interests appear of record or whose interests Plaintiff is otherwise aware of and whose interests will be extinguished or otherwise adversely affected by foreclosure of the Mortgage in this count.

76.     The total amount the Borrower owes under the Loan Documents is **$3,999,426.57,** inclusive of interest and late fees through March 22, 2024. The Borrower is liable for the immediate payment of this amount, together with interest which continues to accrue thereon, plus attorney fees, costs and expenses incurred and to be incurred by Plaintiff in collection thereof.

THEREFORE, Plaintiff respectfully requests this Honorable Court:

A.      Enter Judgment determining the amount Borrower owes Plaintiff under the Mortgage, plus all interest, costs, expenses, protective advances, and attorney fees due thereunder and permitted by law;

B.      Provide in such Judgment that, if  Borrower fails to pay the Judgment in such time prescribed by law, order the foreclosure of the Mortgage and the sale of the Property pursuant to the law in such case made and provided, to satisfy the obligations evidenced by the Term Note and Mortgage, together with interest, costs, and attorney fees as provided under the Loan Documents and permitted by law; and any taxes, insurance, and other amounts paid to preserve, repair, and protect the Property during the redemption period;

C.      Provide that, subsequent to the foreclosure sale, and the running of any period of redemption, upon failure of the Borrower to pay the indebtedness determined by this Court to be due to Plaintiff, that the Borrower and all parties claiming from, under or through the Borrower, be foreclosed and barred from any and all equity of redemption and all claims of, in and to the Property;

D.      Further provide in such Judgment that the net proceeds realized from such public sale to be paid over to Plaintiff in satisfaction, or in partial satisfaction, of the total indebtedness determined to be due to Plaintiff, with any surplus realized there from to be disposed of and distributed as the Court may direct;

E.      Grant Plaintiff a Judgment against the Borrower in the amount of any deficiency between the amount to which Plaintiff is entitled under the Loan Documents and the amount received by Plaintiff as a result of the foreclosure sale;

F.      Further provide in such Judgment that, on such foreclosure and sale, after expiration of any applicable redemption period, the purchaser at the foreclosure sale shall be the fee owner of the Property, free and clear of any interest of Defendants; and

G.      Award Plaintiff all other relief as is just and equitable.

## **COUNT V – APPOINTMENT OF RECEIVER**

77.     Plaintiff incorporates by reference each of the foregoing allegations contained in this Complaint.

78.     Section 20 of the Mortgage (**Exhibit C**) provides:

> 20.     Appointment of Receiver.  Upon or at any time after the filing of a complaint to foreclose this Mortgage, the court in which such complaint is filed shall, upon petition by the Lender, appoint a receiver for the Mortgaged Property in accordance with the Act.  Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of the Borrower at the time of application for such receiver and without regard to the value of the Mortgaged Property or whether the same shall be then occupied as a homestead or not and the Lender hereunder or any other holder of the Note may be appointed as such receiver.  Such receiver shall have power to collect the rents, issues and profits of the Mortgaged Property (i) during the pendency of such foreclosure suit, (ii) in case of a sale and a deficiency, during the full statutory period of redemption, whether there be redemption or not, and (iii) during any further times when the Borrower, but for the intervention of such receiver, would be entitled to collect such rents, issues and profits.  Such receiver also shall have all other powers and rights that may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Mortgaged Property during said period, including, to the extent permitted by law, the right to lease all or any portion of the Mortgaged Property for a term that extends beyond the time of such receiver's possession without obtaining prior court approval of such lease.  The court from time to time may authorize the application of the net income received by the receiver in payment of (a) the Indebtedness, or by any decree foreclosing this Mortgage, or any tax, special assessment or other lien which may be or become superior to the lien hereof or of such decree, provided such application is made prior to foreclosure sale, and (b) any deficiency upon a sale and deficiency.

79.    As described herein, the Borrower has defaulted under the Loan Documents for the reasons as stated above and herein.

80.    Pursuant to section 20 of the Mortgage, the Borrower contractually agreed and consented to the appointment of the receiver upon or at any time after filing a complaint for foreclosure. (**Exhibit C**).

81.    Plaintiff is further entitled to the appointment of a receiver over the Property under the terms of the Assignment of Rents. Upon any default under the Assignment of Rents, the right to collect such rents and proceeds inures to the Plaintiff who, by way of receiver or otherwise, may collect such rents and proceeds as allowed thereunder. (**Exhibit D, section 8, page 6**).

82.    Plaintiff will suffer irrevocable loss and irreparable harm by substantial deterioration in the value of its collateral unless a receiver is appointed to manage, operate, maintain, control, and protect the Property, to collect rents and proceeds, and to cause payment of necessary expenses such as utilities, taxes and insurance, maintenance, and generally to preserve and protect the Property and Plaintiff's mortgage interest thereon.

83.    All parties having an interest in the Property will suffer irreparable loss unless a receiver is appointed to manage, control, and ultimately sell the Property, in lieu of a foreclosure sale, and apply the proceeds of any such sale to pay any and all valid expenses, liens and interests thereon.

84.     This Court may appoint a receiver under Fed. R. Civ. P. 66 and applicable law.

THEREFORE, Plaintiff respectfully requests this Honorable Court:

A.      Enter an order appointing a receiver over the Property with authority to operate, manage, maintain, lease, rent, license or sell the same, including but not limited to the authority to collect rents; maximize the value of the Property; list the property for sale; enter into purchase agreements for the sale of the Property; and to execute and deliver such deeds, leases other contracts or instruments necessary or proper to carry out the foregoing powers; and otherwise do all things necessary to preserve, maintain and protect the Property; and

B.      Enter an order enjoying Defendants and all persons or entities acting by or through or in concert with them, from interfering in any manner with the receiver's powers and duties conferred upon the receiver by this Court; and

C.      Enter an order instructing Defendants and all persons acting through them, to fully cooperate with the receiver in transferring possession of the assets, including the Property, and all books and records, leases contracts or other documents; and

D.      Enter an order directing the receiver to use the proceeds from the receiver's management, use, and/or sale of the Property to defray the expenses of

operations including, but not limited to, payment of real estate taxes, insurance, security, personnel of the receiver actually managing and operating the Property; and

E.      Enter an order directing the receiver to use the proceeds of the sale of the Property, after payment of sale expenses, to pay down the indebtedness under the Loan Documents, to the extent available, with the surplus, if any, to be applied as further ordered by the Court; and

F.      Grant such further relief as the Court may deem fair, just or equitable.

## COUNT VI - ATTORNEY FEES AND COSTS

85.     Plaintiff incorporates by reference each of the foregoing allegations contained in this Complaint.

86.     Section 6 of the Term Note (**Exhibit A**) clearly states that if any suit or action is instituted by Plaintiff or if attorneys are retained to collect on the Term Note, the Borrower contractually promises and agrees to pay all out of pocket costs of collection including reasonable attorneys' fees and court costs.

87.     In addition, pursuant to section 29(e) of the Mortgage (**Exhibit C**) the Borrower also promised and agreed to pay Plaintiff all reasonable attorneys' fees associated with the enforcement of the Term Note, the Mortgage or other Loan Documents.

88.     Both the Term Note and the Mortgage are valid and binding contracts between the Parties.

DocuSign Envelope ID: 81ED3584-966E-4AA5-840E-7BA8ED87EE61

89.     As a result of the Borrower's defaults as described herein, Plaintiff has commenced these proceedings to collect upon the Indebtedness due under the Term Note and has incurred damages in the form of attorneys' fees and costs.

90.     The Borrower is contractually liable for Plaintiff's out of pocket collection costs including reasonable attorneys' fees and court costs.

THEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in favor of Plaintiff and against the Borrower for all of Plaintiff's out of pocket collection costs including reasonable attorneys' fees and court costs incurred in enforcement of the Loan Documents including the collection of Indebtedness under the Term Note, with together with all other relief in favor of Plaintiff as is deemed just and equitable under the circumstances.

## **VERIFICATION**

I declare under the penalties of perjury that the foregoing complaint has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

**PLAINTIFF**

The Huntington National Bank, a national banking association, successor by merger to TCF National Bank,

Dated: March 22, 2024           By: _Wayne A. Jannette_____

                                                    Wayne A. Jannette
                                                    Its:  Vice President
                                                    Financial Recovery Group (FRG)

Respectfully submitted,
ALOIA LAW

/s/ Joseph N. Ejbeh
By:  JOSEPH N. EJBEH (P48961)
     RALPH COLASUONNO (P55019)
Attorneys for Plaintiff
48 South Main Street, Suite 3
Mt. Clemens, MI  48043
586.783.3300
ejbeh@aloia.law
colasuonno@aloia.law

Dated:  March 22, 2024