## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK,
a national banking association,

     Plaintiff,                           CASE NO. 1:24-cv-00305

v.                                     HON.  JANE M. BECKERING
                                         MAG. JUDGE RAY S. KENT

JV SBAM SA LLC, a Michigan Limited
liability company, JOHN R. GIBBS, an
individual, DIEGO REYES, an individual,
GABRIEL P. WEINERT, an individual,
MICHAEL OUAKNINE, an individual, and
the MICHAEL OUAKNINE LIVING
TRUST DATED AUGUST 27, 2019,

     Defendants.

---

ALOIA LAW
By:  JOSEPH N. EJBEH (P48961)
     RALPH COLASUONNO (P55019)
Attorneys for Plaintiff
48 South Main Street, Suite 3
Mt. Clemens, MI  48043
586.783.3300
ejbeh@aloia.law
colasuonno@aloia.law

WILLIAMS, WILLIAMS, RATTNER
  & PLUNKETT, P.C.
By: Richard E. Rassel, III (P57540)
    Jeremy M. Manson (P76920)
Attys. for Defendants/Counter-Plaintiffs
380 N. Old Woodward Ave., Suite 300
Birmingham, MI 48009
248.642.0333
rer@wwrplaw.com
jmmanson@wwrplaw.com

---

### PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER

Plaintiff, The Huntington National Bank ("Plaintiff"), by its counsel, Aloia

Law, brings this motion pursuant to Fed. R. Civ. P. 66, MCL §600.2926, and MCL

§554.1016, and requests entry of an order appointing a receiver over certain commercial property known as (a) 440 Grandville Ave, Grand Rapids, Michigan 49503 (the "Grandville Property"); and (b) 188-190 Wealthy Street, SW, Grand Rapids, Michigan 49503 (the "Wealthy Property") (collectively both properties shall be referred to as the "Properties") based on Defendant JV SBAM SA LLC's (the "Borrower") default under the terms of a significant commercial loan in the original principal amount of $3,960,000.00 (the "Loan").

The Borrower obtained the Loan to secure partial funding for the purchase of the Properties (**ECF No. 1, PageID.6, ¶21**). The Loan is secured by, among other things, a mortgage granted by the Borrower to Plaintiff on the Properties dated May 14, 2021, and recorded on May 20, 2021, Kent County Records (**ECF No. 1-3, PageID.112**). Repayment of the Loan is also guaranteed by the individual Defendants (the "Guarantors") (**ECF No. 1-6, PageID.164**).

The Loan originally matured on May 14, 2023 (**ECF No. 1, PageID.8, ¶27**). On June 21, 2023, (but with an effective date of May 14, 2023) Borrower and Guarantors executed an amendment to the Loan Documents ("Amendment") which, among other things, extended the maturity date of the Loan to January 1, 2024 (**ECF No. 1-7, PageID.185**). In the Amendment, the Borrower acknowledged that the Loan had matured on May 14, 2023 and the entire outstanding balance was then due (**ECF No. 1-7, PageID.186, ¶L**). In fact, the Defendants released Plaintiff from any

and all claims, damages and obligations and further warranted and represented they had no defense to payment of, nor any right to set off against, any of the obligations to the Plaintiff under the Loan documents (**ECF No. 1-7, PageID.189-190, ¶2.5(i)(ii)**). The Amendment also provided, in part, that if Borrower delivered to Plaintiff a term sheet from a new lender evidencing exit financing, as a condition precedent, the Plaintiff would agree to extend the maturity date of the Loan from January 1, 2024, to July 1, 2024 (**ECF No. 1-7, PageID.187, ¶1.2**).

The Borrower never provided the term sheet to Plaintiff and never provided any evidence of exit financing prior to the Loan maturity of January 1, 2024 (**ECF No. 1, PageID.8, ¶31**), and presently the maturity date of July 1, 2024, even if it were extended, has passed and therefore the Loan is in Default. Thus, the Loan matured and remains in default for the Borrower's failure to pay the entire indebtedness due and owing under the Loan upon maturity (**ECF No. 1, PageID.9, ¶32**). Further, the Borrower also failed to pay the 2023 Summer real property taxes as to the Properties which is also an event of default under the Loan documents (**ECF No. 1, PageID.9, ¶35**). Failure to pay these taxes amounts to waste under Michigan law. In addition to the maturity and tax defaults, there exists other uncured events of default under the Loan documents as set forth in Plaintiff's Default Letter dated February 14, 2024 (**ECF No. 1, PageID.10, ¶37**). The Defendants failed to respond, and Plaintiff filed this action on March 22, 2024 (**ECF No. 1**).

3

Under the Loan documents, specifically the Mortgage, the Borrower explicitly agreed and consented to the appointment of a receiver over the Properties upon the occurrence and during the continuance of a default (**ECF No. 1-3, PageID.129, ¶20**). This very Court has previously recognized the importance of such advance consent language in the loan documents regarding the appointment of a receiver in the event of default. In the case of *Huntington National Bank v. Pere Marquette Builders, LLC*, 2024 U.S. Dist LEXIS 18244; 2024 WL 406409, this Court appointed a receiver based on the borrower's failure to pay real estate taxes where the contractual language clearly allowed for such appointment in the event of waste in the form of non-payment of taxes.

This case is no different. Here, in addition to the fact that the Borrower has failed to pay the 2023 real property taxes with respect to the Properties, the Loan has *matured* which is an indisputable event of default entitling Plaintiff to the appointment of a receiver. Thus, such an appointment in this case is absolutely necessary to prevent further waste, loss, potential transfer, dissipation and impairment. Pursuant to Fed. R. Civ. P. 66 and applicable Michigan law, Plaintiff requests the appointment of M. Shapiro Management Company, LLC ("Shapiro") as receiver over the Properties. Acting on behalf of Shapiro would be its senior Vice President Mr. Mark Kassab. Shapiro has extensive experience as a receiver and has

been appointed as receiver over similar commercial properties throughout Michigan in both state and federal courts.

In support of its Motion, Plaintiff relies on its Verified Complaint filed in this matter (**ECF No. 1**), together with its Brief in Support of this Motion filed concurrently herewith.

Pursuant to Local Rule LCivR 7.1(d), counsel for Plaintiff contacted counsel for Defendants in this matter on July 26, 2024, to discuss the nature of this motion, and requested but did not obtain concurrence in the relief sought.

Respectfully submitted,

ALOIA LAW

/s/ Joseph N. Ejbeh
By:  JOSEPH N. EJBEH (P48961)
      RALPH COLASUONNO (P55019)
Attorneys for Plaintiff
48 South Main Street, Suite 3
Mt. Clemens, MI  48043
ejbeh@aloia.law
Dated:  July 26, 2024        colasuonno@aloia.law

**CERTIFICATE OF COMPLIANCE PURSUANT TO LCivR 7.3(ii)**

Pursuant to LCivR 7.3(ii), the total number of words contained in the Brief in Support of Plaintiff's Motion for Receiver is 3,646 not including: (a) the caption, (b) the table of authorities; (c) the question presented; or (d) the signature block. The Brief in Support and the word count has been generated by Microsoft Word, version 2403.

Respectfully submitted,

ALOIA LAW

/s/ Joseph N. Ejbeh
By:  JOSEPH N. EJBEH (P48961)
      RALPH COLASUONNO (P55019)
Attorneys for Plaintiff
48 South Main Street, Suite 3
Mt. Clemens, MI  48043
ejbeh@aloia.law
Dated:  July 26, 2024          colasuonno@aloia.law

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK,
a national banking association,

     Plaintiff,

v.

JV SBAM SA LLC, a Michigan Limited
liability company, JOHN R. GIBBS, an
individual, DIEGO REYES, an individual,
GABRIEL P. WEINERT, an individual,
MICHAEL OUAKNINE, an individual, and
the MICHAEL OUAKNINE LIVING
TRUST DATED AUGUST 27, 2019,

     Defendants.

CASE NO. 1:24-cv-00305

HON.  JANE M. BECKERING
MAG. JUDGE RAY S. KENT

---

ALOIA LAW
By:  JOSEPH N. EJBEH (P48961)
     RALPH COLASUONNO (P55019)
Attorneys for Plaintiff
48 South Main Street, Suite 3
Mt. Clemens, MI  48043
586.783.3300
ejbeh@aloia.law
colasuonno@aloia.law

WILLIAMS, WILLIAMS, RATTNER
  & PLUNKETT, P.C.
By: Richard E. Rassel, III (P57540)
    Jeremy M. Manson (P76920)
Attys. for Defendants/Counter-Plaintiffs
380 N. Old Woodward Ave., Suite 300
Birmingham, MI 48009
248.642.0333
rer@wwrplaw.com
jmmanson@wwrplaw.com

---

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS
## MOTION FOR APPOINTMENT OF RECEIVER

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................... ii

CONTROLLING/MOST APPROPRIATE AUTHORITY ................................... iii

STATEMENT OF ISSUES PRESENTED ................................................. v

I.     INTRODUCTION ................................................................ 1

II.    STATEMENT OF FACTS ...................................................... 2

    A.    The Loan Documents and Secured Indebtedness ...................... 2

    B.    Events of Default under the Loan Documents ......................... 4

    C.    Amount Due and Lender's Right to Appointment of Receiver ................................................................... 5

III.   STANDARD FOR APPOINTMENT OF RECEIVER ....................... 6

IV.   ARGUMENT ...................................................................... 8

    A.    The Loan Documents Expressly provide for Appointment of Receiver ...................................................... 8

        i.     The Mortgage ...................................................... 8
        ii.    The Assignment of Leases and Rents ........................... 9

    B.    Michigan Statutes Authorize the Appointment of Receiver ....................................................................... 11

    C.    The Equities Weigh in Favor of Appointing a Receiver ....................................................................... 12

    D.    M. Shapiro Management Company, LLC, should be Immediately appointed as Receiver over the Properties ........... 14

V.    CONCLUSION AND RELIEF REQUESTED ................................. 15

## <u>CONTROLLING/MOST APPROPRIATE AUTHORITY</u>

*Arbor Farms, LLC v GeoStar Corp.,*
305 Mich App 374, 392-93; 853 NW2d 421 (2014) ...............................................15

*Aviation Supply Corp. v R.S.B.I. Aerospace, Inc.,*
999 F.2d 314, 316-17 (8th Cir. 1993) .......................................................13

*Band v Livonia Assocs.,*
176 Mich. App. 95; 439 N.W.2d 285 (1989)...............................................6

*Cohen v Cohen,*
125 Mich. App. 206; 335 N.W.2d 661 (1983).............................................11

*Fed. Nat'l Mortgage Assoc. v. Maple Creek Gardens, LLC,*
2010 U.S. Dist. LEXIS 5342 (E.D. Mich. Jan. 25, 2010) .......................10

*Fed. Nat'l Mortgage Ass'n v. Newberry Apartments of Eaton County, ltd.*
No. 11, slip op. at 2-4 (W.D. Mich. Oct. 20, 2011).................................10

*Huntington Nat'l Bank v Big Sky Dev. Flint, LLC,*
No. 10-10346, 2010 US Dist. LEXIS 96832 (ED) Mich. Sept. 16, 2010 ................7

*Huntington Nat'l Bank v Pere Marquette Builders, LLC*
2024 U.S. Dist. LEXIS 18244; 2024 WL 406409 ....................................9

*In re Chafee,*
262 Mich. 291, 296; 247 N.W.2d 186 (1933)............................................11

*Liberte Capital Group, LLC v Capwill,*
462 F.3d 551 (6th Circ. 2006)...........................................................7

*McDonald v McDonald,*
351 Mich. 568, 575-76; 88 N.W.2d 398 (1958) .........................................6

*Meyer Jewelry Co. v Meyer Holdings, Inc.,*
906 F. Supp. 428 (E.D. Mich. 1995).....................................................12

*PNC Bank, Nat'l Ass'n v Goyette Mech. Co.,*
15 F. Supp. 3d 754, 758 (E.D. Mich. 2014).....................................6, 9, 13

*Steinberg v Young,*
641 F. Supp. 637 (E.D. Mich. 2009)..........................................................................13

*WBCMT 2003-09 Island Living, LLC v. Swan Creek Limited Partnership,*
2015 U.S. Dist. LEXIS 2245 (E.D. Mich. Jan. 9, 2015) .........................................10

*Westgate v Westgate*
294 Mich. 88, 91; 292 N.W.2d 569 (1940).................................................................7

## Statutes and Court Rules

### Federal Court Rules

Fed. R. Civ. P. 66 ....................................................................................................1, 6

### Michigan Statutes

MCL §554.1011 ...................................................................................................7, 12, 14

MCL §554.1016 .........................................................................................................1, 6

MCL §554.1016(2)(a)...................................................................................................11

MCL §554.1016(2)(b)...................................................................................................12

MCL §554.1016(2)(a) and (b) .......................................................................................7

MCL §554.1017 ............................................................................................................14

MCL §600.2926 ..........................................................................................1, 6, 11, 14

## **<u>STATEMENT OF ISSUES PRESENTED</u>**

Is the Plaintiff entitled to an Order appointing a receiver where (a) the Defendant borrower expressly agreed in the loan documents that Plaintiff has the strict right to such an appointment in the event of a default, (b) and where Defendant borrower has defaulted on and remains in breach of the loan documents and (c) the relief sought is contractually authorized by the parties' express agreement and under the law ?

**Plaintiff says:      YES**

## I.   INTRODUCTION

Plaintiff, The Huntington National Bank ("Plaintiff"), filed the present action against JV SBAM SA LLC, a Michigan limited liability company (the "Borrower") and Michael Ouaknine, The Michael Ouaknine Living Trust Dated August 27, 2019, Diego Reyes, John R. Gibbs and Gabriel P. Weinert (collectively the "Guarantors") seeking to collect and exercise its remedies on a defaulted commercial loan in the original principal amount of $3,960,000.00 (the "Loan") (**ECF No. 1**). In addition to other material defaults including failure to pay real estate taxes, the Borrower remains in default under the loan agreement because the Loan matured in January 2024 and the Borrower has failed to pay the total outstanding indebtedness now due.

Based on this default, and pursuant to Fed. R. Civ. P. 66, MCL §600.2926, and MCL §554.1016, Plaintiff requests entry of an order appointing a receiver over certain commercial property known as (a) 440 Grandville Ave, Grand Rapids, Michigan 49503 (the "Grandville Property"); and (b) 188-190 Wealthy Street, SW, Grand Rapids, Michigan 49503 (the "Wealthy Property") (collectively both properties shall be referred to as the "Properties"), which were given as collateral to secure the amounts due under the Loan.

A receiver should be appointed over these Properties to prevent any further waste, dissipation, diminution of value, and to maximize the value of this real estate for the benefit of all parties involved. Appointment of a receiver does not interfere

with any exit strategy attempts by the Defendants. Rather, a receiver would be able to quickly and efficiently marshal opportunities to market and sell the Properties for the benefit of all involved. Most importantly, the Borrower has consented to such relief under the loan documents between the parties.

## II.   STATEMENT OF FACTS

### A. The Loan Documents and Secured Indebtedness.

On May 14, 2021, the Borrower executed a Term Loan Promissory Note with the Plaintiff in the original amount of $3,960,000.00 (the "Term Note") (**ECF No. 1-1, PageID.26**) along with a Term Loan Agreement (the "Term Loan Agreement") (**ECF No. 1-2, PageID.38**), to secure partial funding of Borrower's purchase of the real properties known as: (a) 440 Grandville Ave, Grand Rapids, Michigan 49503 (the "Grandville Property"); and (b) 188-190 Wealthy Street, SW, Grand Rapids, Michigan 49503 (the "Wealthy Property") (collectively both properties shall be referred to as the "Properties"). The Loan is secured by a mortgage granted by Borrower to Plaintiff dated May 14, 2021, in which Plaintiff was granted a first secured interest in the Properties, as recorded on May 20, 2021, as Document No. 202105200059873, Kent County Records (the "Mortgage") (**ECF No. 1-3, PageID.112**).The Loan is further secured and evidenced by an Assignment of Leases and Rents granted by Borrower to Plaintiff dated May 14, 2021, in which Plaintiff was granted an assignment of secured interest in the Property, as recorded on May

2

20, 2021, as Document No. 202105200059274, Kent County Records (the "Assignment of Leases and Rents") (**ECF No. 1-4, PageID.148**). The Loan is also secured and evidenced by the Bank's perfected filing of a UCC Financing Statement with the Michigan Department of State, recorded on May 14, 2021, as Filing Number 20210514000523-1 (the "UCC Financing Statement") (**ECF No. 1-5, PageID.162**). Finally, the payment of the indebtedness due under the Loan is guaranteed by the Michael Ouaknine Living Trust Dated August 27, 2019[1] (the "Trust"), John R. Gibbs, individually ("Gibbs"), Michael Ouaknine, individually ("Ouaknine"), Diego Reyes, individually ("Reyes"), and Gabriel P. Weinert, individually ("Weinert") (each a "Guarantor" and collectively, the "Guarantors"), promising the full and prompt repayment of the Term Note according to the expressed terms set forth in the "Guaranty of Payment" dated May 14, 2021 (the "Guaranty of Payment") (**ECF No. 1-6, PageID.164**). The Loan originally matured on May 14, 2023. On June 21, 2023, (but with an effective date of May 14, 2023) Borrower and Guarantors executed a First Amendment to Term Loan Agreement, Term Note and Loan Documents ("First Amendment") which, among other things, extended the maturity date of the Loan to January 3, 2024 (**ECF No. 1-7, PageID.185**). Pursuant to the First Amendment, Defendants released Plaintiff from any and all claims, damages and obligations and

---

[1] The Guaranty was signed on behalf of the Trust by Michael Ouaknine and Julie Diffenbach in their capacities as co-trustees of the Trust.

3

further warranted and represented they had no defense to payment of, nor any right to set off against, any of the obligations to the Plaintiff under the Loan Documents. (**ECF No. 1-7, PageID.189, ¶25**).

### B. Events of Default under the Loan Documents.

Section 1.2 of the First Amendment provided, in part, that if Borrower provided to Plaintiff a term sheet from a new lender evidencing exit financing, as a condition precedent, the Plaintiff would agree to extend the maturity date of the Loan from January 1, 2024, to July 1, 2024 (**ECF No. 1-7, PageID.187**). Borrower failed to provide an term sheet to Plaintiff. Accordingly, the Loan matured as of January 3, 2024 (the "Maturity Default"), and Borrower remains in default for failure to pay the outstanding indebtedness dues under the Loan. Moreover, assuming a term sheet was provided, the July 1, 2024 maturity date has now come and gone, and the Loan has matured and is now due and owing in full. In addition to the Maturity Default, the Borrower also failed to pay the 2023 Summer real estate taxes for the Property which is also a default under the Loan Documents ("Tax Default") (**ECF No. 1, PageID.9, ¶35**). *As of the date of this motion, these taxes remain unpaid* (**Exhibit A**).

In addition to the Maturity and Tax Default, there exists other uncured events of default under the Loan documents as set forth in the Plaintiff's Default Letter dated February 14, 2024 (**ECF No. 1, PageID.10, ¶37**). Despite the notice of default

and demand for payment, and the attempt at an amicable resolution to avoid litigation, the Borrower has failed and refuses to pay the Indebtedness owed under the Loan and to date remains in default.

### C. Amount Due and Lender's Right to Appointment of a Receiver.

The unpaid principal balance as of the date of Plaintiff's Verified Complaint is $3,861,903.54, plus interest through that date of $129,881.82, together with late charges of $7,551.21 and other fees of $90.00 through March 22, 2024 (**ECF No. 1, PageID.10, ¶41**). The total amount of principal, interest and late charges and other charges due as of March 22, 2024 is **$3,999,426.57 (ECF No. 1, PageID.10, ¶41).**

Pursuant to the Loan documents including, without limitation, at section 20 of the Mortgage (**ECF No. 1-3, PageID.112**), the Borrower explicitly agreed and consented to the appointment of a receiver over the Property upon the occurrence and during the continuance of a default under the Loan documents. The appointment of a receiver over the Properties in this case is necessary to prevent waste, loss, transfer, dissipation, or impairment as the Borrower remains in default under the Loan documents.  Notably, since the filing of this Complaint, the Defendants engaged in stonewalling to prevent service of process, and it was only after this Court granted alternative relief for service that the Defendants acquiesced through their counsel to accept service. No further stonewalling should be allowed. Now is the

time for the appointment of a receiver under the clear language of the contract between the parties.

### III.   STANDARD FOR APPOINTMENT OF A RECEIVER

This Court is authorized to appoint a receiver as requested by Plaintiff to enforce the covenants under the parties' Loan documents pursuant to Fed. R. Civ. P. 66, MCL §600.2926 (equitable power to appoint receiver), and MCL §554.1016 (Michigan's Receivership Act). Further, the Borrower has *contractually* consented to the appointment of a receiver for the Properties upon default. A borrower's advance consent to the appointment of a receiver is a strong factor weighing in favor of appointing one. *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co*., 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014).

Fed. R. Civ. P. 66 states, in relevant part, that "these rules govern an action in which the appointment of a receiver is sought…" Further, MCL §600.2926 states, in relevant part, that "…judges in their exercise of equitable powers may appoint receivers in all cases pending where appointment is allowed by law." Appointment under this statute is not limited to instances where appointment is expressly provided by statute but also includes instances where the facts and circumstances of the case merit appointment of a receiver over the subject property as an appropriate exercise of the court's equitable jurisdiction. *Band v Livonia Assocs*., 176 Mich. App. 95; 439 N.W.2d 285 (1989); *see also*, *McDonald v McDonald*, 351 Mich. 568, 575-76; 88

N.W.2d 398 (1958) (a court of equity has an inherent right to appoint a receiver in a proper case to implement and enforce its decrees and orders). Further, under Michigan law, a receiver may be appointed when necessary to preserve the property being litigated so as to control and manage it for the parties who may ultimately be entitled to it. *Westgate v. Westgate*, 294 Mich. 88, 91; 292 N.W. 2d 569 (1940). Likewise, a federal district court has broad equitable powers to appoint a receiver for assets disputed in pending litigation. *Liberte Capital Group, LLC v. Capwill*, 462 F.3d 551 (6th Circ. 2006); *see also*, *Huntington Nat'l Bank v Big Sky Dev. Flint, LLC,* No. 10-10346, 2010 US Dist LEXIS 96832 (ED Mich. Sept. 16, 2010) (where a federal district court enforced contractual right of mortgage in loan documents for appointment of receiver on mortgagor's default).

In addition, Michigan has enacted the Receivership Act (MCL §554.1011 *et seq*.) which authorizes the appointment of receiver in this case. Under the Receivership Act, a court may appoint a receiver over commercial property in connection with the foreclosure or other enforcement of a security agreement or lien, if "appointment is necessary to protect the property from waste, loss, transfer, dissipation, or impairment" and/or where "the person that granted a lien in the property agree in a signed record to appointment of a receiver on default." MCL §554.1016(2)(a) and (b).

## IV.   ARGUMENT

### A. The Loan Documents Expressly Provide for Appointment of a Receiver.

Upon an event of default, the Loan documents afford the Plaintiff with several remedies, one of which is to request appointment of a receiver over the commercial properties which form the collateral for the Loan:

### i.   The Mortgage

Section 20 of the Mortgage **(ECF No. 1-3)** explicitly provides as follows:

<u>Appointment of Receiver</u>.  Upon or at any time after the filing of a complaint to foreclose this Mortgage, the court in which such compliant is filed shall, upon petition by the Lender, appoint a receiver for the Mortgaged Property in accordance with the Act. Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of the Borrower at the time of application for such receiver and without regard to the value of the Mortgaged Property or whether the same shall be then occupied as a homestead or not and the Lender hereunder or any other holder of the Note may be appointed as such receiver. Such receiver shall have power to collect the rents, issues and profits of the Mortgaged Property (i) during the pendency of such foreclosure suit, (ii) in case of a sale and a deficiency, during the full statutory period of redemption, whether there be redemption or not, and (iii) during any further times when the Borrower, but for the intervention of such receiver, would be entitled to collect such rents, issues and profits.  Such receiver also shall have all other powers and rights that may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Mortgaged Property during said period, including, to the extent permitted by law, the right to lease all or any portion of the Mortgaged Property for a term that extends beyond the time of such receiver's possession without obtaining prior court approval of such lease.  The court from time to time may authorize the application of the net income received by the receiver in payment of (a) the Indebtedness, or by any decree foreclosing this Mortgage, or any tax, special assessment or other lien which may be or become superior to the lien hereof or of such decree, provided such application is made prior to foreclosure sale, and (b) any deficiency upon a sale and deficiency.

### ii.     The Assignment of Leases and Rents

Likewise, Section 8 of the Assignment of Leases and Rents provides that upon the occurrence and during the continuance of an Event of Default, the Plaintiff is entitled to take possession of the Properties by "court appointed receiver." (**ECF No. 1-4, PageID.153**).

Thus, the appointment of a receiver is an express contractually remedy which was agreed to by the Borrower in this case upon the occurrence of a default. As detailed in the Verified Complaint and as demonstrated above, the Borrower is in default because, in addition to the failure to pay taxes, the Loan has now matured and Borrower has failed to pay the outstanding indebtedness due under the Loan documents. Based on the contractual language *agreed to* by the Borrower, the Plaintiff is entitled to the appointment of a receiver. Under *Goyette, supra*, such advance consent is a strong factor weighing in favor of appointing a receiver.

Federal District Courts in Michigan, including this very Court, have concluded that such language in the loan documents entitles the lender to an appointment of a receiver. Recently, this very Court has recognized the importance of such advance consent language in the loan documents regarding the appointment of a receiver in the event of default. In the case of *Huntington National Bank v. Pere Marquette Builders, LLC*, 2024 U.S. Dist. LEXIS 18244; 2024 WL 406409 (**Exhibit B**), this Court appointed a receiver based on the borrower's failure to pay real estate

taxes where the contractual language clearly allowed for such appointment in the event of waste in the form of non-payment of taxes. Likewise, in *Fed. Nat'l Mortgage Assoc. v. Maple Creek Gardens, LLC*, 2010 U.S. Dist. LEXIS 5342 (E.D. Mich. Jan. 25, 2010), the Court found that a borrower's advance consent to appointment of a receiver in the loan documents "alone is sufficient to conclude that [a lender] is entitled to such an appointment…". *See also*, *Fed. Nat'l Mortgage Ass'n v. Newberry Apartments of Eaton County, ltd. No. 11, slip op. at 2-4* (W.D. Mich. Oct. 20, 2011) (ordering appointment of receiver where borrower consented to appointment in loan documents). Likewise, in *WBCMT 2003-C9 Island Living, LLC v. Swan Creek Limited Partnership*, 2015 U.S. Dist. LEXIS 2245 (E.D. Mich. Jan. 9, 2015), the Court found that where the borrower expressly agreed in the mortgage that its lender would be entitled "as a matter of strict right" to the appointment of a receiver upon an event of default, this Court granted the relief and appointed a receiver.

Here, there exists that same advance consent language in the Loan documents. Further, the Defendants have already admitted the maturity default in the First Amendment (**ECF No. 1-7, PageID.186, ¶L**) and have released Plaintiff from any and all claims, damages and obligations and further warranted and represented they had no defense to payment of, nor any right to set off against, any of the obligations to the Plaintiff under the Loan Documents. (**ECF No. 1-7, PageID.189, ¶2.5**).

10

Based on the clear and unequivocal default by the Borrower without any defense, a receiver should be appointed immediately based on the contractual provisions in the Loan Documents.

**B. Michigan Statutes Authorize the Appointment of a Receiver**.

Michigan statutory law also expressly allows for the appointment of a receiver under these circumstances where court supervision over a deteriorating asset is necessary and warranted. Michigan Courts, in "the exercise of their equitable powers, may appoint receivers in all pending cases where appointment is allowed by law." MCL §600.2926. The Michigan Supreme Court has held that "[r]eceiverships are designed to accomplish in an orderly manner under supervision of the court the maximum degree of benefits to all concerned." *In re Chafee*, 262 Mich. 291, 296; 247 N.W.2d 186 (1933). See also, *Cohen v Cohen*, 125 Mich. App. 206; 335 N.W.2d 661 (1983) (primary purpose of receivership is to preserve property and dispose of it under the order of the court). This Court may, in the exercise of its equitable powers, appoint a receiver over the Property under the authority of MCL §600.2926.

In addition, Michigan's Receivership Act specifically grants Michigan courts the authority to appoint a receiver when necessary to protect a commercial property from waste and loss. MCL §554.1016(2)(a). This Act also expressly permits courts to appoint a receiver where the mortgagor has agreed in a signed record to such an

11

appointment. MCL §554.1016(2)(b). In this case, both of these circumstances have been met. First, the Borrower has already failed to pay real property taxes on one occasion which demonstrates a complete lack of disregard for the management of these Properties which form the collateral for the Loan and which constitutes waste under Michigan law. Second, the Loan has matured which is a glaring material default and Borrower has expressly agreed in the Loan Documents to the appointment of a receiver in the event of default. Third, the Borrower acknowledges that it has no defense to its material Default. Fourth, the long history of stonewalling in the Defendants' avoidance of service of process is noteworthy and contributes to the necessity and urgency for the appointment of a receiver in this matter. Thus, this Court may also appoint a receiver over the Property under the authority of the Michigan Receivership Act, MCL §554.1011 *et seq*.

### C. The Equities Weigh in Favor of Appointing a Receiver.

Even without express statutory authority under state law, federal courts have weighed several factors when determining whether to grant such relief. In the case of *Meyer Jewelry Co. v. Meyer Holdings, Inc.*, 906 F. Supp. 428 (E.D. Mich. 1995), a Michigan federal court considered the following factors for the appointment of a receiver:

> Factors typically influencing the district court's exercise of discretion include the existence of a valid claim by the moving party; the probability that fraudulent conduct has occurred or will occur to frustrate the claim; imminent danger that property will be lost, concealed, or

12

diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and the likelihood that appointment of a receiver will do more harm than good.

Id. at 432 (citing *Aviation Supply Corp. v R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993)). *See also, Steinberg v Young*, 641 F. Supp. 637 (E.D. Mich. 2009).

Here, the appointment of a receiver under supervision of this Court is highly applicable in this instance because: (a) Plaintiff has a valid claim as the Loan documents provide for appointment of a receiver in the event of a default by the Borrower to protect the Property from loss and to preserve and maximize its income generating capacity; (b) due to Borrower's conduct, or lack thereof, in managing and operating the Properties as well as Borrower's non-responsiveness following the Maturity Default all indicate that such unacceptable conduct will continue; (c) Borrower's failure to take any action prior to and upon Maturity Default puts the Properties at significant risk of loss, dissipation and continued damage; (d) Borrower's default clearly shows inability to properly account, manage, develop and utilize the Properties' income generating capacity; (e) there is no adequate legal remedy as the Borrower has failed and refused to pay the indebtedness due, despite opportunities to do so, and the only remaining appropriate equitable remedy is appointment of a receiver under this Court's supervision for the benefit of all concerned. Moreover, the Borrower has *consented* to this relief and, under *Goyette,*

13

*supra*, such advance consent is a strong factor weighing in favor of appointing a receiver; and (f) there is no risk that the appointment of a receiver will do more harm than good. To the contrary, a receiver will be under this Court's supervision and will not interfere with any party's legal rights. Further, a receiver will move quickly and efficiently to stabilize, effectively manage and operate the Properties while maximizing their value.

### D. M. Shapiro Management Company, LLC, should be immediately appointed as Receiver over the Properties.

In this case, Plaintiff requests the appointment of M. Shapiro Management Company, LLC ("Shapiro"), as receiver over the Properties. Shapiro has been appointed as a receiver numerous times over commercial properties throughout Michigan by many state and federal courts (**Exhibit C**). Shapiro has the necessary experience, competence and qualifications with respect to the successful management of commercial properties similar to the Properties at issue (**Exhibit D**). Further, Shapiro is not disqualified to serve as receiver in this matter as required by MCL 554.1017 (**Exhibit E**).

Pursuant to Fed. R. Civ. P. 66, MCL §600.2926 and, most specifically under MCL §544.1011, this Court may appoint M. Shapiro Management Company, LLC, through its agent Mark Kassab, as receiver to protect and preserve the Properties and to safeguard Plaintiff's interest therein. Appointment of a receiver in this case, where an operating business and significant real estate is involved, will promote

14

efficiency and maximize the value of assets to the benefit of all parties. See, e.g.

*Arbor Farms, LLC v GeoStar Corp*., 305 Mich App 374, 392-93; 853 NW2d 421

(2014) (internal citation omitted) (A receiver is intended to "protect and benefit both

parties equally"). Attached hereto as **Exhibit F** is a proposed Order Appointing

Receiver for the Court's consideration.

## V.    CONCLUSION AND RELIEF REQUESTED

Based on the foregoing, Plaintiff respectfully requests that this Court enter the

proposed Order Appointing Receiver attached hereto as **Exhibit F** and further grant

Plaintiff any and all other relief in its favor as is deemed just and appropriate under

the circumstances.

Respectfully submitted,

ALOIA LAW

/s/ Joseph N. Ejbeh
By:  JOSEPH N. EJBEH (P48961)
RALPH COLASUONNO (P55019)
Attorneys for Plaintiff
48 S. Main Street, Suite 3
Mt. Clemens, MI 48043
ejbeh@aloia.law
colasuonno@aloia.law

Dated:  July 26, 2024

15