UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE HUNTINGTON NATIONAL BANK,
a national banking association,

      Plaintiff,

v.

JV SBAM SA LLC, a Michigan Limited
liability company, JOHN R. GIBBS, an
individual, DIEGO REYES, an individual,
GABRIEL P. WEINERT, an individual,
MICHAEL OUAKNINE, an individual, and
the MICHAEL OUAKNINE LIVING
TRUST DATED AUGUST 27, 2019,

      Defendants.

CASE: 1:24-cv-00305-JBM-RSK
HON.: Jane M. Beckering
MAG.: Ray Kent

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER**

**<u>ORAL ARGUMENT REQUESTED</u>**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ i

**CONCISE STATEMENT OF THE ISSUE PRESENTED** ............................... ii

**INDEX OF AUTHORITIES** ................................................................................. iii

**CONTROLLING OR MOST APPROPRIATE AUTHORITY** ...................... iv

**I. INTRODUCTION** ..................................................................................................1

**II.  STATEMENT OF FACTS** ................................................................................3

**III.  LAW RELATING TO APPOINTMENT OF RECEIVER** ........................4

**IV.  ARGUMENT** ......................................................................................................6

  A.  Huntington Created the *Alleged* "Default" and a Receiver is Not Warranted Especially Where Huntington is Over Collateralized. ............................................................. 6

**V. CONCLUSION**....................................................................................................14

## CONCISE STATEMENT OF THE ISSUE PRESENTED

Should this Court order the extreme, extraordinary, "last resort" remedy of appointing a receiver over the real estate assets of Defendant JV SBAM SA LLC where Plaintiff The Huntington National Bank: 1) cannot meet its burden to demonstrate the existence of any contract default by JV SBAM or any of the other requirements for a receivership; 2) breached the implied covenant and duty of good faith and fair dealing in the performance of its contractual obligations and it has in bad faith attempted to destroy JV SBAM's right to receive the benefits of the parties' contract; 3) rendered JV SBAM's further performance under the parties' contract impossible or impracticable; 4) is presently over collateralized based on its own recent appraisal of the subject real estate assets.

JV SBAM and other Defendants say:  NO

01890962.DOCX

# INDEX OF AUTHORITIES

**Cases**

*Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 102 (2016) ....................8

*Crestmark v First Western Trust Bank*, 2020 US Dist LEXIS 182947 (Oct. 2, 2020) ........................................................................................................ passim

*Huntington Nat'l Bank v. Pere Marquette Builders, L.L.C.*, 2024 U.S. Dist. LEXIS 18244 (2024)..............................................................................11, 12, 13

*McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964)...11

*Meyer Jewelry Co v Meyer Holdings*, 906 F Supp 428, 432 (ED Mich, 1995) ....6, 7

*Petitpren v Taylor Sch Dist*, 104 Mich App 283, 296; 304 NW2d 553 (1981) .........5

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 372 (2003) ...............................................................................................................8

*Reed* v. *Reed*, 265 Mich App 131, 161-162 (2005).....................................................5

*Shouneyia* v. *Shouneyia*, 291 Mich App 318, 326 (2011)..........................................5

*Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 530; 730 NW2d 481 (2007) 5

**Statutes**

MCL §554.1015 ........................................................................................................4

MCL §554.1016 .....................................................................................................4, 7

MCL 211.78 ............................................................................................................12

MCL 440.1304 .........................................................................................................7

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

## Statutes

MCL 440.1304

MCL §554.1016

## Cases

*Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 102 (2016)

*Crestmark v First Western Trust Bank*, 2020 US Dist LEXIS 182947 (Oct. 2, 2020)

*McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964)

*Meyer Jewelry Co v Meyer Holdings*, 906 F Supp 428, 432 (ED Mich, 1995)

*Petitpren v Taylor Sch Dist*, 104 Mich App 283, 296; 304 NW2d 553 (1981)

*Reed* v. *Reed*, 265 Mich App 131, 161-162 (2005)

*Shouneyia* v. *Shouneyia*, 291 Mich App 318, 326 (2011)

*Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 530; 730 NW2d 481 (2007)

# I. INTRODUCTION

This action[1] concerns a May 14, 2021 $3,960,000.00 commercial loan ("Loan") Plaintiff Huntington National Bank ("Huntington") made to Defendant JV SBAM SA, LLC (" JV SBAM") that the individually named Defendants guaranteed in the event of certain contingencies. JV SBAM used the Loan to purchase the real property located at (i) 440 Grandville Ave., Grand Rapids, MI 49503 ("Grandville Property"), and (ii) 188-190 Wealthy Street, SW, Grand Rapids, MI 49503 ("Wealthy Property") (together the "Property") for development purposes. The Loan was made pursuant to the following May 14, 2021 Loan documents: (i) Term Loan Promissory Note; (ii) Term Loan Agreement; (iii) Mortgage; (iv) Assignment of Leases and Rent; and (v) Guaranty of Payment. The original Loan maturity date was May 14, 2023.

As detailed below, Huntington breached the implied covenant and duty of good faith and fair dealing in the performance of its contractual Loan obligations and it has in bad faith attempted to destroy JV SBAM's right to receive the benefits of the parties' Loan thus barring Huntington's claims in total *and* certainly the

---

[1] Huntington argues that Defendants attempted to evade service of process. Mot, p 5. Not only does Huntington fail to offer any evidence in support of its argument, but this position is extraneous to the Court's consideration of whether to grant the extreme, extraordinary, "last resort" remedy of the appointment of a receiver over Defendant's real estate assets under federal and Michigan law and is simply a transparent and inappropriate attempt by Huntington to "poison the well".

1

extreme, extraordinary, "last resort" and preliminary receiver remedy sought here. Due to Huntington's actions, JV SBAM's further performance under the Loan has become impossible or impractical. Moreover, the parties have modified the Loan and/or waived certain rights and duties under the Loan verbally, in writing, and/or through a clear course of conduct such that JV SBAM is not now, nor has ever been, in default of the Loan and none of the Defendants are now, nor have ever been, liable to Huntington. Lastly, Huntington is presently over collateralized with respect to the Loan and cannot demonstrate any extraordinary circumstances nor emergency here justifying a request for a receiver. Huntington's own appraisal of the Property dated February 26, 2024, received by Huntington just prior to filing the lawsuit on March 22, 2024, was for $5,670,000 – a $1,710,000 real estate asset-based security cushion based on Huntington's own claim that $3,960,000.00 is owed.

The law considers receiverships over specific assets appropriate in only the most *extreme*, *last resort* and *emergency* like situations, *where no other remedy at law is available*, <u>and</u> *prior court ordered mitigation efforts have failed* – a scenario wholly and sorely lacking here. Huntington is not contractually or equitably entitled to any receivership relief. The Court just recently appointed Thomas McNeill, Esq. (30-year commercial litigation and commercial lending litigation attorney, formerly partner at Dickinson Wright) as mediator in this case on stipulation of the parties. Mr. McNeill has not yet begun his work on this matter but could prove invaluable to

2

a negotiated resolution and aid the parties in forbearance discussions to allow for alternate financing with respect to JV SBAM's real estate assets.[2]

There is no basis for the appointment of a receiver. Huntington's motion should be denied.

## II.  STATEMENT OF FACTS[3]

On June 21, 2023, the parties executed a First Amendment to Term Loan Agreement, Term Note and Loan Documents ("First Loan Amendment", **Ex. 2**) which extended the Loan maturity date to January 3, 2024 (*Id.*, § 1.1) and would further extend the Loan maturity date to July 1, 2024 if JV SBAM provided Huntington a new lender financing term sheet. *Id.*, § 1.2. Accordingly, JV SBAM provided Huntington with a financing term sheet from Housing and Urban Development ("HUD") dated October 12, 2023. **Ex. 3**. Further, as part of the negotiations between the parties relating to the First Loan Amendment, the parties agreed that JV SBAM would be permitted to reallocate approximately $250,000 that

---

[2] JV SBAM is in final stage negotiations with its current commercial tenant at the property, Sherwin Williams Company, to extend the term and expand the space of that lease relationship. This lawsuit, and particularly this Motion, have delayed, hindered and frustrated negotiations between JV SBAM and Sherwin Williams over the lease extension and expansion, a fact of which Huntington is fully aware. An extension and expansion of the JV SBAM and Sherwin Williams lease would greatly aid JV SBAM in providing additional underwriting value for a refinance of the real estate assets with an alternative lender.

[3] **Ex. 1** is the Declaration of JV SBAM managing member Gabriel Weinert who has personal knowledge and can testify under oath in support of the facts stated herein.

JV SBAM had previously deposited at Huntington in an interest reserve for the Loan to pay closing costs for the First Loan Amendment and interest payments going forward. This was confirmed between the parties verbally and in writing. **Ex. 4**. Importantly, JV SBAM's reserve was adequate to cover the First Loan Amendment closing costs and interest payments until refinancing could be achieved with HUD or other alternate lender by July 1, 2024 (or thereafter if later amended by the parties). However, after reaching this agreement, Huntington, in bad faith, breached the agreement and would not allow JV SBAM to reallocate its reserve funds to close the First Loan Amendment and Huntington switched course and suddenly insisted that JV SBAM establish a new reserve to cover the Loan interest going forward. Huntington then claimed JV SBAM was in default and out of term on the Loan.

### III.  LAW RELATING TO APPOINTMENT OF RECEIVER

Huntington requests that this Court order the appointment of a receiver over JV SBAM's real estate asset. Federal courts can look to state law for guidance on receivership motions. *Crestmark v First Western Trust Bank*, 2020 US Dist LEXIS 182947 (Oct. 2, 2020). **Ex. 5**. The Michigan Receivership Act acknowledges that principles of equity and law that preceded the Act supplement it unless displaced by it. MCL §554.1015(5). MCL §554.1016(2) indicates a court "may" [permissive not mandatory] appoint a receiver if (a) necessary to protect the property from waste, loss, transfer, dissipation, or impairment, (b) the person that granted a lien in the

4

property agreed in a signed record to appointment of a receiver on default, or (c) the property is not sufficient to satisfy the secured obligation. With that said, Michigan jurisprudence acknowledges that appointment of a receiver is an **extreme and draconian remedy** that should be used only in the harshest circumstances, and only where there is **no other adequate remedy at law** and **other court efforts have failed** through intransigence or incompetence:

> [T]he appointment of a receiver is a harsh remedy which should only be resorted to in **extreme cases**…If less intrusive means are available to effectuate the relief granted by the trial court, a receiver should **not** be used…When **other approaches have failed** to bring about compliance with the **court's orders**, whether through intransigence or incompetence, a receivership may then be appropriate. *Petitpren v Taylor Sch Dist*, 104 Mich App 283, 296; 304 NW2d 553 (1981). (emphasis added).

Use of a receiver is "an extraordinary remedy," and one "will not be appointed when there **exists an adequate remedy at law**." *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 530; 730 NW2d 481 (2007). (emphasis added). A receiver is not appointed as the agent of, or for the benefit of, one party or the other; rather he or she is appointed to protect and benefit both parties equally. *Id*. at 528. Michigan courts consistently state that "a receiver should only be appointed in **extreme cases**." *Shouneyia* v. *Shouneyia*, 291 Mich App 318, 326 (2011) quoting *Reed* v. *Reed*, 265 Mich App 131, 161-162 (2005). (emphasis added). Moreover, "a receivership must be thoroughly justified on the facts, is always to be considered a remedy of '**last resort**,' and therefore is not often applied in practice." *Petitpren* at 295.  (emphasis

5

added). Additionally, Federal Courts traditionally weigh the below factors in deciding whether to exercise equitable powers and appoint a receiver:

> [T]he existence of a valid claim by the moving party; the probability that fraudulent conduct has occurred or will occur to frustrate the claim; imminent danger that property will be lost, concealed, or diminished in value; inadequacy of legal remedies; lack of a less drastic equitable remedy; and the likelihood that appointment of a receiver will do more harm than good. *Meyer Jewelry Co v Meyer Holdings*, 906 F Supp 428, 432 (ED Mich, 1995).

## IV.  ARGUMENT

**A.  Huntington Created the *Alleged* "Default" and a Receiver is Not Warranted Especially Where Huntington is Over Collateralized.**

A review of the *Meyer Jewelry Co*. factors utilized by federal courts when deciding whether to exercise their broad equitable powers to impose a receivership strongly disfavor the imposition of a receiver in this case. Those very factors were recently relied on by Judge Cleland to deny a similarly situated lender's motion for appointment of a receiver in a breach of contract/asset foreclosure action where the lender had claimed there was a default and the default was factually denied by the borrower. *Crestmark v First Western Trust Bank*, 2020 US Dist LEXIS 182947 (Oct. 2, 2020). **Ex. 5**. In *Crestmark*, Judge Cleland cautioned that "a decision to appoint a receiver at the **beginning of a case** should be made with **exceptional caution**." *Id*. *3 (emphasis added). Judge Cleland further noted and warned that "The court will **not short-cut** the traditional process of civil litigation and render a contested legal

6

ruling, touching on the ultimate merits, at an initial stage of the case." *Id*. *5 (emphasis added).

**First**, Huntington will not and cannot succeed on its core default claim. Under MCL §554.1016(2)(b) and *Meyer Jewelry Co, supra*, Huntington bears the burden of demonstrating a valid claim that would act as a predicate to its request for a receiver. Huntington cannot meet its burden. As detailed above, JV SBAM vigorously disputes any default as the parties modified the Loan to allow JV SBAM to present a term sheet for an alternate financing source (which JV SBAM did, from HUD, dated October 12, 2023. **Ex. 3**) and to fund the First Loan Amendment closing and administrative expenses from its $250,000 reserve and that the term would thus be extended until at least July 1, 2024. A duty of good faith and fair dealing exists in every contract in Michigan, whether or not it is spelled out as such. See MCL 440.1304 ("Every contract or duty within this act imposes an obligation of good faith in its performance and enforcement."). As such, a duty of good faith not to interfere with JV SBAM's performance under the Loan and/or the First Loan Amendment did not need to be a term explicitly written into the parties' contract documents for it to be breached by Huntington. Accordingly, by its actions in frustrating the implementation of the First Loan Amendment and then preemptively commencing suit on March 22, 2024, and then seeking a receiver, Huntington acted in bad faith and thus destroyed the benefit to JV SBAM of the parties' bargain, a basis for a

7

counterclaim against Huntington that is being developed. Huntington's request for a receiver at the very beginning of this case is nothing more than an attempt to short-circuit JV SBAM's right to use the traditional litigation process to develop the record and defend against Huntington's allegations and possibly counter-sue. *Crestmark*, *supra*.

The law supports JV SBAM's substantive position here, as it is well established that parties are at liberty to modify or waive the rights and duties established by a contract. *Bank of Am., NA v. First Am. Title Ins. Co.*, 499 Mich. 74, 102 (2016) (citing *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 372 (2003)). This is true even with regard to written contracts containing anti-waiver provisions or provisions requiring any modification to be in writing, which contracts can be modified or waived notwithstanding their restrictive amendment clauses. *Quality Prods.*, 469 Mich. at 372. This is because the parties possess, and never cease to possess, the freedom to contract even after the original contract has been executed. *Id.* Upon proof of an express agreement, the mutuality requirement is clearly satisfied, because where the parties expressly modify their previous contract, rescission of the terms of the prior agreement is a necessary implication. *Id.* at 373. *Parties may also rely on a course of conduct to establish modification* and in those cases, a waiver analysis is also necessary. *Id.* at 374. These standards do not mean that modification or waiver always "requires an oral or written

8

expression of amendment. It is well settled that *a course of affirmative conduct, particularly coupled with oral or written representations*, can amount to waiver." *Id.* at 379 (emphasis added). JV SBAM has therefore **not** consented to a receiver and Huntington has **not** established a valid claim. Huntington's conclusory argument that "Plaintiff has a valid claim as the Loan documents provide for appointment of a receiver in the event of a default by the Borrower", Mot, p 13, is unavailing.

Huntington argues,

Defendants have already admitted the maturity default in the First Amendment and have released Plaintiff from any and all claims, damages and obligations and further warranted and represented they had no defense to payment of, nor any right to set off against, any of the obligations to the Plaintiff under the Loan Documents. Based on the clear and unequivocal default by the Borrower without any defense, a receiver should be appointed immediately based on the contractual provisions in the Loan Documents." Mot, pp 10-11.

This is incomplete and wrong. Defendants have not admitted default and are vigorously contesting a default. The First Loan Amendment provides, "The Term Loan matured on May 14, 2023, and is now immediately due and payable in full to the Bank." *Id.*, § L. The First Loan Amendment extended the maturity date; there was no default and no admission of default. Moreover, the First Loan Amendment contained a release pursuant to which the Defendants released Huntington from legal claims "occurring on or prior to the date hereof arising out of or relating to any matter or thing whatever occurring prior to the date of this Amendment…[Defendants] warrant, represent and acknowledge that as of the date hereof they have no defense

9

to the payment of, nor any right to set off against, all or any of the obligations to the Bank". *Id*., § 2.5. The release language is limited to claims arising ***on or prior*** to the date of the First Loan Amendment, which is June 21, 2023. The release does not apply to claims and defenses arising ***after*** June 21, 2023, which include Huntington's post-June 21 refusal to allow JV SBAM to reallocate its reserve funds to close and administer the First Loan Amendment.

As noted above, by its actions in frustrating the implementation of the First Loan Amendment and then preemptively commencing suit on March 22, 2024 and then seeking a receiver, Huntington destroyed the benefit to JV SBAM of the parties' bargain, a basis for a possible counterclaim against Huntington. Further, as noted above at Footnote 2, JV SBAM is in final stage negotiations with its current commercial tenant at the property, Sherwin Williams Company, to extend the term and expand the space of that lease relationship. However, this lawsuit and particularly this Motion have delayed, hindered and frustrated negotiations between JV SBAM and Sherwin Williams over the lease extension and expansion, a fact of which Huntington is fully aware. An extension and expansion of the JV SBAM and Sherwin Williams lease would greatly aid JV SBAM in providing additional underwriting value for a refinance of the real estate assets with an alternative lender, an event that may well have already occurred absent Huntington's own breach of the parties' agreement, bad faith and overly aggressive litigation posture.

01890962.DOCX

Huntington also argues "the Loan has matured which is a glaring material default". Mot, p 12. The Loan matured on July 1, 2024 pursuant to the terms of the First Loan Amendment. **Ex. 2 and Ex. 3**. Though, as noted above, Huntington filed this action on March 22, 2024 – ***more than three months before*** the maturity date. When July 1 came around, JV SBAM was unable to pay off the Loan because the pending litigation and later request for a receiver prevented JV SBAM from securing alternate financing. See *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964) (a substantial breach of contract occurs when further performance by the other party is rendered ineffective or impossible by the other party's breach). Thus, not only did Huntington create the alleged "default" by reneging on its agreement to allow JV SBAM to fund the First Loan Amendment from its $250,000 reserve, but Huntington compounded its problem by filing this lawsuit before the July 1 maturity date and thus acted in bad faith and in first breach of the parties' agreements and bargain, rendering JV SBAM's further performance ineffective or impossible. *Id*.

**Second**, Huntington has not alleged that any fraudulent conduct has occurred or will occur to frustrate its claim.

**Third**, there is no evidence to suggest an imminent danger that the Property will be lost, concealed, or diminished in value. Huntington relies on *Huntington Nat'l Bank v. Pere Marquette Builders, L.L.C.*, 2024 U.S. Dist. LEXIS 18244 (2024), but

11

01890962.DOCX

that case is distinguishable for two important reasons. First, the defendants in *Pere Marquette* did not even appear in that case and there was no indication those defendants would pay the outstanding taxes. "Defendants, by virtue of their non-appearances in this case, have not quelled concerns that the property is vulnerable. Instead, once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint, except those relating to the amount of damages." *Id*. at *13. In contrast, JV SBAM is currently in the process of securing the necessary resources to pay the 2023 property taxes. Indeed, the Property is not subject to tax forfeiture until March 2025, and not subject to a judgment of tax foreclosure until March 31, 2026 assuming JV SBAM had not previously redeemed the Property. MCL 211.78 *et seq*. There is **no imminent danger** here like there was in *Pere Marquette*. Second, the defendants in *Pere Marquette* owed more than the underlying value of the properties by a wide margin, as "the aggregate sum of $362,840.07 is owed…In contrast, the value of each property is approximately $80,000 which is inadequate security for the debt to Huntington." *Id*. at *12. In our case, there *is* adequate security and Huntington is presently over collateralized, as the value of the Property exceeds the debt. Huntington's own appraisal of the Property dated February 26, 2024 (**Ex. 6**) was $5,670,000 – **a $1,710,000 real estate asset-based security cushion** based on

01890962.DOCX

Huntington's claim that $3,960,000.00 is owed. See Mot generally, and Complaint. PageID.2. *Pere Marquette* is not inapplicable.

**Fourth**, like the Plaintiff in *Crestmark*, Huntington has failed to show an inadequacy of legal remedies. Indeed, Huntington seeks the legal remedy of money damages (loan repayment, interest, attorney fees) in its Complaint. Huntington's conclusory argument that "there is no adequate legal remedy as the Borrower has failed and refused to pay the indebtedness due, despite opportunities to do so", Mot, p 13, is therefore contradicted by its own Complaint, is unsupported by any facts in the record and is wholly unavailing.

**Fifth**, Huntington has not sought less drastic equitable remedies. This case was filed on March 22, 2024. Defendants filed their answer on June 19, 2024. **Nothing else has occurred**, and Huntington has not sought other remedial measures (none are warranted). Huntington's conclusory argument that "the only remaining appropriate equitable remedy is appointment of a receiver under this Court's supervision for the benefit of all concerned", Mot, p 13, incorrectly implies other remedies have been sought, when they have not.

**Sixth**, the appointment of a receiver will do more harm than good.  The only party who will benefit from the appointment of a receiver is Huntington, who stands first in line to collect money should the Property be sold at a receivership-driven fire

13

sale, which undoubtedly is Huntington's goal.  The members and other investors and stakeholders in JV SBAM's success could very well suffer a staggering loss.

*Lastly*, as noted above, The Court just recently appointed Thomas McNeill, (30-year commercial litigation and commercial lending litigation attorney, formerly partner at Dickinson Wright) as mediator in this case on stipulation of the parties. Mr. McNeill has not yet begun his work on this matter but could prove invaluable to a negotiated resolution and aid the parties in forbearance discussions to allow for alternate financing with respect to JV SBAM's real estate assets.

## V. CONCLUSION

Huntington is not entitled to the appointment of a receiver over SBAM's Property contractually, statutorily or equitably. This is hardly an "extreme case", a case of "last resort", a case "without other adequate legal remedy" or a case where "other approaches have failed to bring about compliance with the court's orders, whether through intransigence or incompetence", that would justify a draconian request for receiver. This is especially true at this early stage of the litigation where it is already apparent that Huntington created the very situation it now complains of.

Huntington's request for appointment of a receiver should be denied.

### Certificate of Compliance

The total number of words in this document generated using Microsoft Word is 3,572.

                                          Respectfully submitted:

Dated: August 20, 2024           By:    s/ *Richard E. Rassel*
                                        RICHARD E. RASSEL, III (P57540)
                                        JEREMY M. MANSON (P76920)
                                        Williams, Williams, Rattner & Plunkett PC
                                        380 N. Old Woodward Ave, Suite 300
                                        Birmingham, MI 48009 (248) 642-0333
                                        *Attorneys for Defendants*

01890962.DOCX